600 So.2d 457 (1992)
THE FLORIDA BAR, Complainant,
v.
Hugh MacMILLAN, Jr., Respondent.
No. 76563.
Supreme Court of Florida.
May 21, 1992.
*458 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Bar Counsel, Fort Lauderdale, for complainant.
Alan C. Sundberg and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, and Cecil H. Albury of Alley, Maass, Rogers & Lindsay, P.A., Palm Beach, for respondent.
PER CURIAM.
Hugh MacMillan, Jr. petitions for review of a referee's recommendations regarding guilt and sanctions against him. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
The Florida Bar filed a five-count complaint against MacMillan, alleging misconduct relating to MacMillan's duties as guardian of the property which the minor Scott T. Ellison (Ellison) received from his deceased father's estate. As guardian, MacMillan received six pieces of the father's jewelry to hold until Ellison reached the age of majority. In anticipation of Ellison's eighteenth birthday, MacMillan delivered three of the pieces of jewelry to Ellison's mother, who was the guardian of Ellison's person. However, MacMillan was unable to locate or deliver the remaining items of jewelry, consisting of two jeweled rings and a stickpin. In response, the mother demanded that MacMillan compensate Ellison for the monetary value of the jewelry. The mother also reported the matter to The Florida Bar.
On April 2, 1986, MacMillan transferred $4,000 from the Ellison guardianship account to his personal account without prior notice to Ellison or the mother and without prior notice or leave of the court. MacMillan reimbursed the entire amount to the guardianship account by personal check within two weeks of the original transfer, and notified the mother of the transfer and reimbursement. However, MacMillan filed a Return of Guardian of Property with the circuit court covering the time period between January 1, 1986, and December 31, 1986, which reported neither the withdrawal nor the reimbursement.
MacMillan admitted the negligent loss of the jewelry, the $4,000 transfer out of and into the guardianship account, and the failure to report the transfers in the guardian's report. However, MacMillan denied that he intentionally misappropriated Ellison's money or that he intentionally concealed the transfer from the probate court.
The referee found MacMillan not guilty of two of the counts in the bar's complaint. The referee found insufficient evidence to support the charge that MacMillan made a knowing misrepresentation regarding one of the missing rings. The referee also found that although the methodology employed by MacMillan to obtain guardian fees was "rather lax," it was an accepted practice at the time and not a violation of the law.
The referee recommended that MacMillan be found guilty of violating the following: the former Florida Bar Integration Rule, article XI, rule 11.02(4) and/or Rule Regulating The Florida Bar 5-1.1[1] (property *459 entrusted for a specific purpose is held in trust and must be applied only to that purpose) and Rule Regulating The Florida Bar 4-1.15(a) (a lawyer shall hold in trust, separate from the lawyer's own property, property in the lawyer's possession in connection with a representation and such property shall be appropriately safeguarded) for failure and inability to deliver the three items of jewelry entrusted to him as guardian of Ellison's property; the former Florida Bar Integration Rule, article XI, rules 11.02(3)(a) (lawyer subject to discipline for the commission of any act contrary to honesty, justice, or good morals) and 11.02(4) (money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose) and Disciplinary Rules 1-102(A)(1) (lawyer shall not violate a disciplinary rule), 1-102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1-102(A)(6) (lawyer shall not engage in any conduct that adversely reflects on his fitness to practice law), of the former Code of Professional Responsibility, for misappropriating funds from Ellison's guardianship account for personal use; and Rules Regulating The Florida Bar 3-4.3 (commission by lawyer of any act which is unlawful or contrary to honesty and justice may constitute cause for discipline), 4-8.4(a) (lawyer shall not violate the Rules of Professional Conduct), and 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) for intentionally misrepresenting to the court the receipts and disbursements of the guardianship account.
The referee found the following mitigating factors to be present: absence of a prior disciplinary record; a cooperative attitude toward the proceedings; a timely good faith effort to make restitution; and good character and reputation. The referee also found the following aggravating factors to be present: substantial experience in the practice of law; a dishonest or selfish motive in the misappropriation of the $4,000; a pattern of misconduct regarding the handling of the guardianship property; an apparent cover-up to the court in not accounting for the transactions involving the taking, use, and restitution of the $4,000; and the existence of multiple offenses. The referee recommended that MacMillan be suspended from practice for two years in order "to deter others who might be prone or tempted to become involved in like violations" and "to protect the public from unethical conduct." The referee also recommended that MacMillan take and pass the ethics portion of The Florida Bar Examination.
MacMillan asserts that The Florida Bar did not establish by clear and convincing evidence that he intended to misappropriate funds from Ellison. He also claims that there was no evidence to support the referee's conclusion that the omission of the transfers from the Return of Guardian of Property was an intentionally dishonest act, and that such a conclusion directly conflicts with the referee's explicit finding of "neglect." We disagree.
A referee's findings of fact come to the court with a presumption of correctness and will be upheld unless clearly erroneous or lacking in evidentiary support. The Fla. Bar v. Stalnaker, 485 So.2d 815 (Fla. 1986). If findings of the referee are supported by competent, substantial evidence, this Court is precluded from re-weighing the evidence and substituting its judgment for that of the referee. The Fla. Bar v. Hooper, 509 So.2d 289 (Fla. 1987).
The record in this case supports the referee's findings that both the misappropriation of funds and the failure to disclose the transfers in the guardian's report were intentional acts. MacMillan admitted that he had "misgivings" about taking the funds from the guardianship account and that he took the funds for personal use. Furthermore, MacMillan signed the Return of Guardian of Property, declaring "[u]nder penalties of perjury" that the return "constitutes a full and correct account of the receipts and disbursements" of all of Ellison's property during the time period when the transfer occurred. Yet, neither the withdrawal by MacMillan nor his subsequent restitution were reflected on the return.
*460 MacMillan also argues that the referee's findings relating to these omissions from the guardian report are in conflict. Although one sentence of the referee's report states that MacMillan "neglect[ed] to report" the transfers to the court, a reading of the entire report leaves no doubt that the referee found that MacMillan "intentionally misrepresented to the court the receipts and disbursements" of Ellison's property. Thus, we approve the referee's findings of fact.
Additionally, MacMillan claims that a ninety-one-day suspension is a more fitting punishment for his misconduct. The Florida Bar urges that the Court approve the referee's recommended two-year suspension.
"This Court has repeatedly asserted that misuse of client funds is one of the most serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate punishment." The Fla. Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla. 1991). Indeed, Florida's Standards for Imposing Lawyer Sanctions provides that "[d]isbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury." Florida's Standards for Imposing Lawyer Sanctions § 4.11 (Fla. Bar Bd. Governors 1986). Likewise, standard 6.11 calls for disbarment when a lawyer knowingly submits a false document with the intent to deceive the court. Id. § 6.11. Under these standards, disbarment is presumptively the appropriate discipline for the type of misconduct present in this case. However, this presumption can be rebutted by various acts of mitigation, such as cooperation and restitution. The Fla. Bar v. Schiller, 537 So.2d 992 (Fla. 1989). Even considering the significant mitigating factors present in this case, we find that no less than the discipline recommended by the referee is warranted.
We accordingly approve the report of the referee, and suspend Hugh MacMillan, Jr. from the practice of law for a period of two years. Upon filing of this opinion, MacMillan shall accept no new business. To allow MacMillan thirty days to close his practice in an orderly fashion and thereby protect the interests of his clients, suspension is effective on June 22, 1992. Additionally, MacMillan is required to take and pass the ethics portion of The Florida Bar Examination before he may resume the practice of law. Judgment is entered against MacMillan for costs in the amount of $2,155.47, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, J., recused.
NOTES
[1] The Rules Regulating The Florida Bar became effective January 1, 1987, and integrated all rules pertaining to the bar into a single document. See Rules Regulating The Florida Bar, 494 So.2d 977 (Fla. 1986). In this case, it was impossible for the referee to determine when the missing jewelry went out of trust; the jewelry came into MacMillan's trust in 1985 and could not be delivered upon demand in January 1989. Thus, the referee found a violation of one or both rules because it was unclear which rule was controlling.