PER CURIAM.
We have for review a referee’s report on complaint of The Florida Bar. The accused attorney, Harold Behrman, seeks review of the referee’s following recommendations: 1) suspension for ninety days; 2) payment of costs for proceedings in the amount of $4,929.98; and, 3) payment of restitution in the amount of $1,000 to each of the three injured parties, John Dodds, John Blanton, and Captain Eslie Birchwood.
We have jurisdiction pursuant to article V, section 15, of the Florida Constitution. We approve the referee’s report.
The referee’s report and the record reflect the following facts. Harold Behrman is a seventy-nine-year-old attorney who was admitted to the New York Bar in 1939. He practiced law for almost three years before entering military service in World War II. Thereafter, between 1948 and 1982, Behrman owned and operated retail shops. In 1987, Behrman was admitted to The Florida Bar, and subsequently developed a solo law practice.
In June 1990, Behrman met R. Mark Hunter who retained him to handle a personal injury claim on behalf of his wife. Hunter told Behrman that he was a Pennsylvania attorney and loan broker with the ability to assist people who wanted to borrow money, but were without the collateral necessary to obtain funding. According to Hunter, he represented individuals with considerable funds, who for a fee, would provide letters of credit to serve as collateral for prospective borrowers to post with the bank of their choice.
*96 In June 1991, Behrman accepted Hunter’s invitation to share office space and became involved in Hunter’s business dealings by agreeing to act as escrow agent for funds solicited by Hunter from prospective borrowers. The borrowers would deposit funds in Behrman’s trust account to permit Hunter’s clients to process the borrowers’ applications for the letters of credit. Hunter assured Behrman that if no funding resulted for the prospective borrowers, at least two-thirds of the escrowed funds would be remitted to each of the depositors and Behrman would be paid $1,000 for each transaction.
Dodds, Blanton, and Birehwood were borrowers for whom Behrman acted as escrow agent. In each case, he disbursed the funds without authorization from the borrowers. On October 16, 1991, Dodds, on behalf of Green Point Development, sent Behrman $23,000 for deposit in the trust account. Within twelve days of receipt, Behrman disbursed $22,000 in violation of his duties as escrow agent and kept the remaining $1,000 as his fee.
On December 3, 1991, John Blanton, on behalf of Pines Investment Group, Inc., wire transferred $12,000 to Behrman and faxed a message to him stating in part, “said sum to be held in trust by you until the funding and closing of the transaction between Mr. Mark Hunter’s clients, myself and the Pines Investment Group, Inc.” In less than four days, Behrman disbursed $10,900 in violation of Blanton’s directions and his duty as escrow agent.
On December 4,1991, Captain Eslie Birch-wood sent Behrman $25,000 to deposit in the trust account. After learning that Behrman had disbursed the funds, Birehwood requested the return of his money numerous times. He was able to recover directly from Hunter only $16,000. Behrman kept $1,000 for his fee.
While The Florida Bar’s complaint did not mention Birehwood, he testified on the Bar’s behalf at the hearing held on March 28,1994. His testimony refuted Behrman’s letter of September 16, 1992, in which Behrman stated that all transactions for which he was escrow agent were successfully concluded “to the satisfaction of all the parties.” Birch-wood testified that his business dealings with Behrman and Hunter were not resolved to his satisfaction, notwithstanding the fact that he signed a release. Behrman’s motion for reconsideration in light of the release was denied and the referee declined to modify his report with regard to Behrman’s owed restitution to Birehwood.
Since June 1992, when Behrman first became aware of a pending inquiry by The Florida Bar, he has insisted that all of his files and records of the escrow transactions were missing from his office, and he has failed to produce requested records and documents. Additionally, Behrman claimed that his faxes, mail, and telephone calls were frequently intercepted by Hunter.
The referee determined that Behrman did not act criminally or fraudulently. Specifically, the referee found Behrman not guilty of violating the following Rules Regulating the Florida Bar: rule 3-4.3 (misconduct and minor misconduct); rule 3-4.4 (criminal misconduct); rule 4r-8.1(a) (knowingly making a false statement of material fact); rule 4-8.4(a) (violating or knowingly assisting another to violate the Rules of Professional Conduct); rule 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer); and rule 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
The referee’s report reflects that Behr-man, as an escrow agent, had the duty to hold the monies received in trust and to apply those monies to the purposes for which they were entrusted. While Behrman testified that he disbursed funds in reliance on missing contracts, the referee concluded that he did not comply with the standards set forth in the Rules Regulating Trust Accounts and noted in particular that on one occasion he paid a personal obligation by a check drawn upon the trust account.
In his report, the referee found that Behr-man was guilty of violating the following Rules Regulating the Florida Bar: rule 5-1.1(a) (money held in trust must be applied only to the purpose for which entrusted); rule 5-1.1(c) (trust accounts must be pre *97 served as official records); rule 5-1.1(d) (minimum trust account records and procedures must be maintained); and rule 5-1.2(b) (minimum trust account record requirements must be met).
The following mitigating factors were considered by the referee: 1) Behrman’s age; 2) Behrman’s limited experience practicing law; 3) Behrman’s clear disciplinary record; and, 4) Behrman’s military service. Based on his findings, the referee made the following recommendation as to discipline in his amended report of October 13, 1994:
I recommend that the Respondent be suspended for a fixed period of ninety (90) days. Further, Respondent shall pay the costs of these proceedings in the amount of $4,929.98 and shall make restitution to Blanton, Dodds, and Birchwood in the amount of $1,000 each. Respondent shall pay restitution at the rate of $50.00 each per month to Blanton, Dodds, and Birch-wood, in the sum total of $150.00 per month. Provided; [sic] however, that the balance shall be paid within one and one-half years.
Behrman contends that his fifteen-month emergency suspension should preclude additional suspension. He further argues that the order for restitution and costs should be reversed because he is not guilty of wrongdoing. He insists that he was totally misled by Hunter, and that he could not produce the requested records because Hunter stole his files. He suggests that, at most, an admonishment is appropriate because he failed to maintain ledger cards or a receipts and disbursements journal. The Bar, on the other hand, contends that the referee’s recommended disciplinary sanction is “appropriate and warranted under the circumstances.”
Upon review of the record, we conclude that the referee’s findings of fact and recommendations as to guilt are supported by competent substantial evidence and the recommended discipline is appropriate. We agree with Behrman that he should be given credit for his temporary suspension. Accordingly, Harold Behrman is suspended, nunc pro tunc, for a ninety-day period commencing November 25, 1992. He shall make restitution as stated in the referee’s amended report of October 13, 1994. Judgment for costs in the amount of $4,929.98 is entered for The Florida Bar against Harold Behr-man, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.