705 So.2d 1387 (1998)
THE FLORIDA BAR, Complainant,
v.
Robert Paul JORDAN, II, Respondent.
No. 89111.
Supreme Court of Florida.
February 5, 1998.
*1388 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and Jan Wichrowski, Rose Ann DiGangi-Schneider and James W. Keeter, Bar Counsel, Orlando, for Complainant.
Robert P. Jordan, II, pro se, Palm Bay, Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Robert Paul Jordan II. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the report.
The referee made the following findings of fact based on evidence presented at the disciplinary hearing:
1. In 1989, Christine Mitchell brought a Civil action against Jack Eckerd Corporation ("Eckerds"), Travelers Insurance Company and the unknown pharmacist employed by Eckerds for negligently filling a prescription which allegedly injured Ms. Mitchell. The Civil Complaint was filed on June 30, 1989, in a suit styled Mitchell v. Jack Eckerd Corp. et al., Case number 89-10384-CA-S, in the Eighteenth Judicial Circuit Court, Brevard County, Florida (hereinafter "The Mitchell case");
2. Ms. Mitchell was represented by Attorney Estelle Powell, who was licensed in Indiana but not in Florida. Ms. Powell testified at the evidentiary hearing and later supplemented her testimony with a letter dated February 13, 1997, wherein she stated that she is no longer licensed to practice law in Indiana, but works as an "independent consultant" for the Law Firm of Robert L. Lewis & Associates. At the time she represented Ms. Mitchell, Ms. Powell associated with attorney Bruce T. McKinley, a licensed Florida lawyer, who filed a Notice of Appearance in the Mitchell case on September 6,1989;

*1389 3. On September 22, 1989, the Court dismissed Travelers Insurance Company as a party Defendant and further dismissed the Plaintiff's claim for attorney's fees;
4. On November 7, 1989, Ms. Powell's Motion for Leave to Appear Pro Hac Vice was granted by the Trial Court in the Mitchell case;
5. Ms. Powell wrote to the Respondent in a letter dated October 23, 1989, which memorialized a telephone conversation between Ms. Powell and the Respondent concerning the respondent's Notice of Appearance to be filed in the Mitchell case. Ms. Powell again wrote to the Respondent on December 11, 1989, stating that he had twenty days from November 27, 1989, within which to amend the Complaint. The Respondent was supposed to draft and file the Amended Complaint and to interview Ms. Mitchell and her husband;
6. The Respondent did not file the Amended Complaint until December 19, 1989, after the twenty-day period had elapsed. The Respondent included Travelers Insurance Co. as a Defendant although the Court had ruled on September 22, 1989, that Travelers was dismissed from the suit;
7. On January 2, 1990, defense counsel moved to dismiss the Amended Complaint on the basis that Travelers had been improperly included and that the attorney's fee claim was barred under the doctrine of res judicata;
8. On March 16, 1990, the Court approved a Stipulation for Substitution of Counsel and the Respondent became counsel of record. On March 29, 1990, the Respondent filed a Second Amended Complaint, again naming Travelers as a Defendant;
9. Ms. Powell attempted to contact the Respondent by phone or letter, but it was very difficult to communicate with him. After leaving a telephone message, Ms. Powell never received a return call from the Respondent. Ms. Mitchell exhibited a great deal of frustration over her inability to communicate with the Respondent to Ms. Powell;
10. By letter dated April 25, 1990, Ms. Powell requested the Respondent call her concerning a Notice of Ex parte Hearing on a Motion to Dismiss the Amended Complaint, which notice she had received from opposing counsel. The hearing was set for May 7, 1990. However, the Respondent failed to communicate with Ms. Powell;
11. On May 16, 1990, the Court filed an Order again striking Travelers as a Defendant. The Court also struck the Respondent's claim for attorney's fees;
12. On July 21, 1992, the opposing party moved to dismiss the suit for lack of prosecution. The Court entered a Motion, Notice and Order of Dismissal ordering the Respondent to show cause at least five days before August 24, 1992 (the date of the dismissal hearing), why the Mitchell case should not be dismissed for lack of prosecution. The Show Cause Order was served upon the Respondent. However, the Respondent failed to respond to this Order;
13. The Court dismissed the case on August 24, 1992, due to Respondent's failure to prosecute or show good cause why the matter should not be dismissed.
14. The Respondent failed to advise either Ms. Powell or Ms. Mitchell of the dismissal.
15. On May 11, 1993, Ms. Powell wrote to the Respondent and advised that she had checked with the Clerk's Office on May 10, 1993, and learned that the Mitchell case had been dismissed. She asked the Respondent to seek reinstatement of the case immediately, but the Respondent failed to take any action.
16. Ms. Mitchell and Ms. Powell met with the Respondent at some time in 1990. The Respondent did not return any of her many telephone messages. The Respondent had no explanation for the dismissal of her case other than to say that "it just slipped through his desk."
17. The Respondent offered to pay Ms. Mitchell for the dismissal of her case by entering into a contract with her. Further, the Respondent said that "he didn't have any insurance so he would have to *1390 pay her out of his pocket." The Respondent never advised Ms. Mitchell that she should seek independent representation in connection with a claim for professional malpractice.
18. Ms. Mitchell had approximately ten (10) meetings with the Respondent from August 1995 through January or February 1996 concerning whether the Respondent would pay her for the dismissal of her Civil suit.
19. The Respondent asked Ms. Mitchell to contact Ms. Powell to see if she had professional malpractice insurance to cover this case.
Based on these findings of fact, the referee reached the following conclusions concerning guilt:
III. Recommendations as to Whether or Not the Respondent Should Be Found Guilty: As to each Count of the Complaint, I make the following recommendations as to guilt or innocence:
I recommend that the respondent be found guilty, by his admission, of violating Rules 4-1.1, 4-1.3, and 4-1.4, Rules Regulating The Florida Bar.
I recommend that the Respondent be found guilty, by clear and convincing evidence, of violating Rule 4-1.8(h), Rules Regulating The Florida Bar. The Respondent's meeting with Ms. Mitchell from August 1995 through January or February 1996  numbering approximately ten (10) meetings  were an attempt to settle a potential claim for malpractice liability without first advising Ms. Mitchell in writing that she should seek independent representation in connection with such claim.
IV. Rule Violations Found: Rules 4-1.1; 4-1.3; 4-1.4; and 4-1.8(h), Rules Regulating The Florida Bar.
In his petition for review, Jordan challenges the referee's conclusion that he violated rule 4-1.8(h). Our review of the record, however, shows that competent substantial evidence supports the referee's findings of fact and conclusions concerning guilt and accordingly "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). Furthermore, a party contesting the findings and conclusions "carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). Jordan has failed in this burden. We adopt the referee's findings of fact and conclusions concerning guilt.
Based on the above violations of the disciplinary rules, the referee recommended that the following disciplinary action be taken against Jordan:
V. Recommendation as to Disciplinary Measures to Be Applied:

I recommend that the Respondent be suspended for a fixed period of twelve (12) months, thereafter until Respondent shall prove rehabilitation including, but not limited to, proof of passage of the Florida Bar Examination and for an indefinite period until Respondent shall pay the costs of these proceedings.
VI. Personal History and Past Disciplinary Record: After the finding of guilt and prior to recommending discipline to be recommended pursuant to Rule 3-7.6(k)(1)(D), I considered the following personal history and prior disciplinary record of the Respondent, to wit:
Age: 43
Date admitted to Bar: April 11, 1980
Prior disciplinary convictions and disciplinary measures imposed therein:
1. Minor Misconduct, TFB Case No. 92-30,198(18C)  admonishment before a grievance committee for entering into a business arrangement with a client;
2. Public Reprimand, Sup.Ct. Case No. 79,999  public reprimand for failing to timely file an appeal on behalf of a criminal defendant client, thereby causing the client's appellate right to be unduly delayed;
3. 30-day Suspension, Sup.Ct. Case No. 85,109  30-day suspension for failing to keep client informed as to status of representation, in failing to act with reasonable diligence and promptness in representing *1391 client, and in failing to respond to disciplinary agency; and
4. 91-Day Suspension, Sup.Ct. Case No. 86,271  91-day suspension for failing to provide competent representation or act with reasonable diligence in postconviction relief proceedings, in failing to keep the client reasonably informed, in failing to expedite litigation, and in failing to respond in writing to an inquiry by a disciplinary agency.
Jordan seeks review of the recommended discipline, arguing that the referee erred in considering certain aspects of his prior disciplinary record and that the recommended discipline is too harsh. We disagree. Jordan's prior disciplinary record is relevant when determining appropriate discipline in the present case. See Fla. Std. for Imposing Lawyer Sanctions 9.22. Nor is the recommended discipline too harsh. See, e.g., Florida Bar v. Morrison, 669 So.2d 1040 (Fla. 1996) (imposing a one-year suspension for neglect resulting in prejudice); Florida Bar v. King, 664 So.2d 925 (Fla.1995) (imposing a three-year suspension for neglect resulting in prejudice); Florida Bar v. Greenspahn, 396 So.2d 182 (Fla.1981) (imposing an eighteen month suspension for neglect resulting in prejudice).
The Court will not second-guess a referee's recommended discipline "as long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Laing, 695 So.2d 299, 304 (Fla.1997). Accordingly, Robert Paul Jordan, II, is hereby suspended from the practice of law in Florida for one year and thereafter until he proves rehabilitation, including passage of the Florida Bar Examination. The suspension will be effective immediately upon filing of this opinion.[1] Judgement for costs in the amount of $1,427.49 is hereby entered in favor of The Florida Bar against Robert Paul Jordan, II, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] Jordan was recently suspended for committing additional breaches and has not yet been reinstated to the Bar. See Florida Bar v. Jordan, 690 So.2d 1301 (Fla.1997); Florida Bar v. Jordan, 682 So.2d 548, 550 (Fla.1996).