752 So.2d 586 (2000)
THE FLORIDA BAR, Petitioner,
v.
N. David KORONES, Respondent.
No. SC92873.
Supreme Court of Florida.
January 27, 2000.
*587 John F. Harkness, Jr., and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and David R. Ristoff, Branch Staff Counsel, Tampa, Florida, for Complainant.
Martin Errol Rice, St. Petersburg, Florida, for Respondent.
PER CURIAM.
We have for review the complaint of the Florida Bar and the referee's report regarding alleged ethical breaches by N. David Korones. The referee has recommended a ninety-day suspension. The Florida Bar has sought review, requesting disbarment. We have jurisdiction. Art. V, § 15, Fla. Const.

STATEMENT OF THE CASES AND FACTS:

CASE NO. SC92873
On April 27, 1998, the Bar filed a complaint against Korones. On November 20, 1998, Korones stipulated to the following facts: In 1988, Korones' uncle died testate in North Carolina. Korones, a residual beneficiary of the estate, qualified as executor of the estate. Korones filed an inventory with the North Carolina court listing the approximate value of the estate at $343,752. During the years 1989-1991, Korones (1) converted $123,750 to his own use, (2) paid himself $7,611 in fees, and (3) paid himself $4,750 and his son $7,000 more than the other beneficiaries. On July 22, 1994, Korones submitted a purported final accounting to each of the residual beneficiaries falsely stating that after receipts and payments, $115,291.53 remained in the estate. After Korones was removed as personal representative of the estate, the successor representative brought suit against Korones and a substantial judgment in favor of the estate was entered.
Korones stipulated to the following violations: (1) Rule Regulating the Florida Bar 4-8.4(c) ("A lawyer shall not ... engage in conduct involving dishonesty, *588 fraud, deceit or misrepresentation ....") and (2) Rule Regulating the Florida Bar 5-1.1(a) ("Money or other property entrusted to an attorney for a specific purpose ... must be applied only to that purpose. [A] refusal to deliver over such property on demand shall be deemed a conversion."). Korones also stipulated to minor trust account violations. With the referee adopting and approving these stipulations, testimony at the November 20, 1998, hearing consisted of evidence submitted on behalf of Korones in mitigation of discipline and the Bar's cross-examination of witnesses.
In her report, the referee recognized that the conversion of funds is a serious matter. However, she reasoned that mitigating factors in Korones' case warranted discipline less severe than disbarment, those factors being (1) personal or emotional problems (including marital problems and "significant financial stress due to the expenses of educating three children in private schools and colleges"); (2) good faith efforts to make restitution; (3) full and free disclosure to the disciplinary board; (4) cooperative attitude towards the proceedings; (5) good character and reputation; (6) mental or physical disability or impairment (i.e., heart problems which caused Korones to experience dizziness, lack of balance, high blood pressure and erratic heartbeats, and which ultimately led to heart surgery in 1995; the taking of medications which had the potential to impair Korones' judgment); and (7) remorse. The referee also found the following aggravating circumstances: (1) dishonest or selfish motive and (2) substantial experience in the practice of law. She stated that two incidents of negligence in 1982 and 1985, for which Korones received private reprimands, were too remote to be considered aggravating factors.
The referee recommended that Korones be suspended for ninety days. In recommending this discipline, the referee relied upon cases in which attorneys had misappropriated or mishandled client funds and this Court imposed discipline less severe than disbarment. See Florida Bar v. Condon, 647 So.2d 823 (Fla.1994); Florida Bar v. Cramer, 643 So.2d 1069 (Fla.1994); Florida Bar v. MacMillan, 600 So.2d 457 (Fla.1992); Florida Bar v. Schiller, 537 So.2d 992 (Fla.1989). The referee further noted that a ninety-one day suspension, which requires an attorney to demonstrate rehabilitation before being reinstated, was not necessary because Korones had already demonstrated rehabilitation. The referee also added that more severe discipline would only delay the time that it would take for Korones to begin repaying the individuals who loaned him the money to make final restitution to the beneficiaries in this case. The Bar seeks review of the referee's recommendation.
On July 23, 1999, Korones filed a motion to supplement the record. In this motion, Korones stated that he reached a settlement agreement with the beneficiaries of his uncle's estate and had paid them $110,000 in restitution. The funds were gathered by members of Korones' community. With his motion, Korones provided the affidavit of the attorney who negotiated his settlement with the beneficiaries. In this affidavit, the attorney stated that "counsel for the Estate is in the process of preparing and obtaining execution of a satisfaction of the Judgment entered against Mr. Korones." The Bar had no objection to the motion. On August 26, 1999, the Court granted Korones' motion to supplement.

CASE NO. SC96628
On September 10, 1999, Korones pled guilty to grand theft and received two years' probation for his misappropriation of the funds from his uncle's estate. On September 28, 1999, the Bar filed a "Notice of Determination or Judgment of Guilt," and requested the entry of an order suspending Korones, pursuant to Rule Regulating the Florida Bar 3-7.2(e). On September 29, Korones filed a "Petition to Modify or Terminate Suspension and Motion to Consolidate." In his petition, Korones argued that the referee's report in *589 case number SC92873 demonstrated that there is good cause for modification of a rule 3-7.2 suspension. The Bar filed a response to this petition, arguing that suspension should be imposed and that Korones' petition to modify suspension should be denied.
Case numbers SC92873 and SC96628 were consolidated and after oral argument, this Court entered an order denying Korones' petition to modify or terminate suspension. See Florida Bar v. Korones, 744 So.2d 458 (Fla.1999).

DISCIPLINE
With the foundation that Korones has stipulated to rule violations, the issue upon which this Court must focus is whether the referee's recommendation of a ninety-day suspension is reasonably supported by existing case law. See Florida Bar v, Fredericks, 731 So.2d 1249, 1254 (Fla.1999). In reviewing a referee's recommendation of discipline, the Court's "scope of review is somewhat broader than that afforded to findings of fact because, ultimately, it is [the Court's] responsibility to order an appropriate discipline. Discipline must be fair to the public and to the respondent and `must be severe enough to deter others who might be prone or tempted to become involved in like violations.'" Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989) (citation omitted) (quoting Florida Bar v. Lord, 433 So.2d 983, 986 (Fla.1983)).
This Court has held that "[i]n the hierarchy of offenses for which lawyers may be disciplined, stealing from a client must be among those at the very top of the list." Florida Bar v. Golub, 550 So.2d 455, 456 (Fla.1989)(quoting Florida Bar v. Tunsil, 503 So.2d 1230, 1231 (Fla.1986)). This Court has also held that disbarment is presumed to be the appropriate discipline for misuse of client funds; however, this presumption can be rebutted by mitigating circumstances. See Florida Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla.1991). The reason that misuse of client funds warrants such a severe discipline has been articulated as follows:
The single most important concern of this Court in defining and regulating the practice of law is the protection of the public from incompetent, unethical, and irresponsible representation. The very nature of the practice of law requires that clients place their lives, their money, and their causes in the hands of their lawyers with a degree of blind trust that is paralleled in very few other economic relationships. Our primary purpose in the disciplinary process is to assure that the public can repose this trust with confidence. The direct violation of this trust by stealing client's money, compounded by lying about it, mandates a punishment commensurate with such abuse.
Florida Bar v. Ward, 599 So.2d 650, 652 (Fla.1992) (emphasis removed) (quoting Florida Bar v. Dancu, 490 So.2d 40, 41-42 (Fla.1986) (citation omitted)).
In the instant cases, Korones converted approximately $123,752 to his personal use, paid himself $4,750 more than the other beneficiaries, and paid his son $7,000 more than the other beneficiaries. Korones testified during the hearing that he paid his son because his son threatened to report him to the Bar if Korones failed to provide additional proceeds. Korones further testified that he filed a false accounting with the beneficiaries, stating that $116,000 remained in the estate when there were actually only a few dollars left.
The current status of Florida law indicates that, despite the mitigating circumstances found by the referee, a ninety-day suspension is far too lenient for these violations. The only two cases upon which the referee relied for leniency where this Court imposed a ninety-day suspension were Florida Bar v. Behrman, 658 So.2d 95 (Fla.1995), and Florida Bar v. Cramer, 643 So.2d 1069 (Fla.1994). However, these cases are easily distinguishable from Korones' situation. In Behrman, the referee *590 found that while Behrman wrongfully disbursed trust account funds, he did not act criminally or fraudulently. 658 So.2d at 96. The referee also noted that Behrman had limited experience in the practice of law. Id. at 97. In the instant cases, Korones, who has thirty-six years of experience in the practice of law, admitted that he converted the funds that he knew belonged to the other residual beneficiaries and then filed a false accounting to hide his misappropriation. We conclude that Korones' conduct in the instant cases is far more egregious than that of the attorney in Behrman.
In Cramer, the attorney became delinquent in employee taxes after being out of the office for five months with serious medical problems. 643 So.2d at 1069-70. Fearing that the Internal Revenue Service would garnish his operating account, Cramer left legal fees that he had earned in his trust account. Id. at 1070. Money from the trust account was then used to pay operating and personal expenses. Id. Cramer also deposited trust account funds from a client into his operating account. Id. He later deposited personal funds into the trust account to replace the money removed. Id. This Court found that Cramer's misuse of the trust account to deceive the IRS constituted dishonest and deceitful behavior. Id. Nevertheless, this Court followed the referee's recommendation of a ninety-day suspension because (1) Cramer had serious health problems, (2) none of Cramer's clients were injured by Cramer's conduct, and (3) Cramer fully cooperated with the Bar. Id. at 1070-71.
Even though Korones similarly suffered health problems during the time when the violations occurred and he fully cooperated with the Bar, we conclude that the violations here warrant more severe discipline than Cramer received. First, as a mitigating factor in Cramer, the Court found that none of Cramer's clients suffered any injury. In the instant cases, even though it appears that Korones has repaid the residual beneficiaries of his uncle's estate, the beneficiaries were deprived of their inheritance for over ten years. Therefore, unlike the clients in Cramer, the beneficiaries of Korones' uncle's estate appear to have suffered significant injury. Second, there is no indication that Cramer ever made affirmative misrepresentations to clients who provided him with trust account funds. On the other hand, Korones issued a false accounting to the beneficiaries of his uncle's estate, and also paid his son to avoid disclosure of his violations to the Bar.
In the other cases the referee cited to support her recommendation, this Court imposed a suspension in excess of ninety days. In Florida Bar v. MacMillan, 600 So.2d 457 (Fla.1992), this Court imposed a two-year suspension on an attorney who (1) negligently lost client jewelry that had been entrusted to him, (2) misappropriated funds, and (3) failed to report to the court a transfer of the client's funds from the guardianship account to his personal account. Id. at 458, 460. This Court held that the suspension was warranted "[e]ven considering the significant mitigating factors present in this case." Id. at 460. See also Ward, 599 So.2d at 651, 653 (one-year suspension imposed for stealing money from law firm where referee found that attorney had good reputation in the community and act appeared to be "an aberration that was completely out of character"); Schiller, 537 So.2d at 993 (attorney who misused client funds suspended for three years where clients were not injured by his misuse and attorney was "genuinely remorseful" and a good candidate for rehabilitation).
Further, this Court has held that mental or physical health problems are not a complete defense to the misuse of client funds. In Florida Bar v. Condon, 647 So.2d 823, 823-24 (Fla.1994), this Court chose not to disbar an attorney who suffered from severe depression and could not remember what he had done with client funds during a period of time when he stopped taking *591 his medication. Nevertheless, the Court imposed a three-year suspension. Id.
On the other hand, this Court has held that marital and economic problems are not an excuse for conversion of client funds, and disbarment is an appropriate discipline. See Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991). In Shanzer, this Court stated that such problems "are visited upon a great number of lawyers. Clearly, we cannot excuse an attorney for dipping into his trust funds as a means of solving personal problems." Id. at 1384. The Court followed the referee's recommendation of disbarment even though Shanzer argued that his remorse, his efforts to pay restitution, and his full cooperation with the Bar warranted less severe discipline. Id. at 1383.
In Florida Bar v. Golub, 550 So.2d 455, 456 (Fla.1989), the Court chose not to follow the referee's recommendation of a three-year suspension and instead disbarred an attorney who served as personal representative of an estate and wrongfully converted funds from that estate. The Court stated that mitigating factors, such as Golub's alcoholism and his cooperation in the disciplinary proceedings, "do not outweigh the fact that [Golub] stole substantial sums of money over an extended period of time from a client who had bestowed his trust upon the respondent to see that the client's beneficiaries were cared for after his death." Id.
In Florida Bar v. Graham, 605 So.2d 53, 53-54 (Fla.1992), this Court disbarred an attorney who had converted funds from a client's settlement proceeds and then lied to the Bar about it in the context of an inquiry. Graham argued that disbarment was not warranted because of the existence of mitigating factors in his case, including a good faith effort at restitution, personal and emotional problems, the absence of a prior disciplinary record, and remorse. Id. at 55. The Court concluded that these factors did not outweigh the presumption that disbarment was the appropriate remedy in Graham's case. In so holding, this Court noted that "stressful familial and financial obligations are common problems. However, we cannot excuse a lawyer's misappropriation of a client's funds and misrepresentations to cover up any wrongdoings as a means to solve life's problems.... Dishonesty and a lack of candor cannot be tolerated by a profession that relies on the truthfulness of its members." Id. at 56.
We conclude that the conduct involved in the matter before us is more similar to Golub and Graham than to the circumstances presented in the cases cited by the referee. Korones, like Golub, misappropriated funds from the estate of which he was a personal representative. While Graham made misrepresentations to the Bar regarding the status of his client's funds, Korones made intentional misrepresentations to the beneficiaries. In both Golub and Graham, this Court held that mitigating factors such as remorse, attempts at restitution, and cooperative attitude did not outweigh the fact that the attorneys stole funds from their clients.
In determining the discipline to be imposed in a case involving the misappropriation of funds, we must look to the circumstances surrounding the misappropriation. In the instant cases, we are faced with a situation in which an attorney with an exemplary career has intentionally and wrongfully misappropriated money from clients and diverted it for his personal use or for the benefit of his family. Further, this attorney affirmatively filed a false accounting with the beneficiaries of his uncle's estate and paid his son so that he would not be reported to the Bar. The latter actions clearly indicate that the attorney was well aware of the wrongfulness of his conduct.
Prior commendable acts cannot exonerate an attorney from the discipline that must be imposed for intentional, egregious ethics violations, such as those which have occurred in the instant cases. Therefore, despite Korones' attempted reliance *592 upon remorse, financial and familial difficulties, health problems, good reputation, and restitution to the beneficiaries, we conclude that disbarment is the discipline that must be imposed.
It is indeed a sad day when an attorney having so many virtues important to the honor of the legal profession falls victim to the vice of avarice. However, neither praise of past glory and good deeds, nor mere disappointment with the frailties of humanity can substitute for our duty to properly protect the citizens of Florida. There is certainly a lesson for all lawyers to learn from these most unfortunate of circumstances: Always honor and never betray the oath that grants one the privilege to be a Florida lawyer, no matter how much or how little money may entice.

CONCLUSION
Accordingly, N. David Korones is disbarred from the practice of law effective, nunc pro tunc, December 13, 1999, for a period of five years. As a condition of his readmission, Korones shall be required to file a copy of the satisfaction of the judgment entered against him in favor of the estate and beneficiaries. In this Court's November 12 order denying Korones' petition to modify or terminate suspension, this Court afforded Korones thirty days to close out his practice and protect the interests of existing clients, and further ordered that Korones was to accept no new business from the date the order was issued. Accordingly, Korones' disbarment in the instant case is effective on the date his suspension became effective in case number SC96628.
Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from N. David Korones in the amount of $3,989.24, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.