832 So.2d 701 (2002)
THE FLORIDA BAR, Complainant,
v.
Domenic L. MASSARI, III, Respondent.
No. SC01-724.
Supreme Court of Florida.
October 31, 2002.
*702 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Brett Alan Geer, Assistant Staff Counsel, and Thomas Edward DeBerg, Assistant Staff Counsel, Tampa, FL, for Complainant.
John A. Weiss of Weiss & Etkin, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Domenic L. Massari, III. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings of fact and recommendation that Massari be disbarred for misconduct, including the misappropriation of client funds.

FACTS
The Florida Bar filed a complaint against Domenic L. Massari, III, alleging that he violated several Rules Regulating the Florida Bar in his handling of a client's funds. After a hearing, the referee issued a report making detailed findings.
Massari represented Mr. Martinez and his Florida corporation in a civil case, which involved a contract dispute over money owed for a residence that Martinez's corporation built for Dr. and Mrs. Steen. Martinez paid Massari $7000 in fees before the case settled. On February 14, 2000, the case settled at mediation with the Steens agreeing that Martinez's company would receive $30,000 from funds held in escrow by First American Title Insurance Company. Martinez and Massari agreed that, upon receipt of the $30,000, Massari would receive an additional $5000 in legal fees, plus any costs, to conclude the representation. The Steens' counsel provided Massari with a blank "Satisfaction and Release of Lien," to be signed by Martinez to effectuate the agreement. Massari's longtime secretary, Judith Hebert, notarized the satisfaction and release of lien, attesting that Martinez had affixed his signature to it on March 8, 2000. However, the referee found that this document was forged because "[s]omeone other than Ronald Martinez signed Mr. Martinez's name to the Satisfaction and Release of Lien." The referee specifically found that "Martinez did not sign the Satisfaction and Release of Lien on March 8, 2000; moreover, at no time did Mr. Martinez grant any power of attorney to respondent, nor did he otherwise authorize respondent to sign any legal document in his stead."
On March 13, Massari traveled to First American Title Insurance Company and presented the forged satisfaction and release of lien to office manager Donna Durbin. She accepted the document Massari presented and gave him a check for $30,000 payable to Martinez's corporation. Although the check did not identify Massari as a payee, Massari then endorsed and negotiated the check and deposited the funds into his client trust account on the day he received it, March 13. Massari did not notify Martinez of his receipt of the funds.
Shortly thereafter, Massari made five separate disbursements that he admitted were for his own personal use or benefit, encompassing the entire $30,000: (1) on *703 March 13, he disbursed $7,238.30 as his "fee" for the Martinez representation; (2) on March 16, he disbursed $4500 to himself; (3) on March 24, he disbursed $9,711.70 from the Martinez ledger account to another client ledger account, ostensibly to refund fees paid to him previously by another client; (4) on March 28, he disbursed $7800 to himself; and (5) on March 30, he disbursed the remaining $750 to himself. The referee found that Martinez was entitled to receive the funds in March 2000, when Massari received them. Massari never accurately advised Martinez of his use and disbursement of the funds.
Because Martinez did not receive his settlement proceeds in a timely manner, Martinez questioned Massari about the funds. Martinez was not satisfied by Massari's response, so in May 2000, Martinez discussed the situation with his friend, attorney Larry Rardon. At Rardon's suggestion, Martinez called the title company holding the money, First American Title Insurance Company. In a phone conversation, escrow assistant Kirby Harlow informed Martinez that his account showed a zero balance because his proceeds had been disbursed back in March. Martinez went to the title company to meet with Durbin and Harlow, who showed him the satisfaction and release of lien that Massari had delivered to the title company. Martinez informed Durbin and Harlow that the notarized signature on the document was not his. They also showed Martinez the negotiated check, and he declared that he had not endorsed or negotiated the check. Durbin notified the Steens' legal counsel of Martinez's declarations. The Steens' legal counsel contacted the Tampa Police Department and The Florida Bar, both of which initiated investigations.
On June 13, 2000, Massari deposited $24,200 back into the client ledger account of Martinez's corporation, paying $24,200 to Martinez and retaining $5800 out of the original $30,000 figure as his fee. Massari or his staff then prepared a letter to the Tampa Police Department, which Massari wanted Martinez to sign. Eventually, after several days of attempting to revise the letter, Martinez reluctantly signed the letter and gave it to the police. The police did not pursue the criminal investigation of Massari's conduct because Martinez said he was satisfied to receive his money and he did not wish to see criminal charges pressed against Massari.
Pursuant to the Bar's investigation, Massari and his counsel met with the Bar's assistant staff counsel in October 2000. At this meeting, Massari presented a document for the first time, titled "Martinez Escrow Instructions" (hereinafter "escrow document"). The document allegedly contained notarized signatures of Massari and Martinez. Massari claimed this notarized document was a grant of authority from Martinez to himself that explained his conduct involving his receipt, possession, and use of Martinez's funds. The referee noted that the escrow document indicated it was signed on February 14, 2000, but the referee specifically found that Martinez never signed the document. Relying on testimony from the Bar's handwriting expert, Ray Green, the referee found that Martinez's signature appearing on the escrow document was a "transposition" (i.e., cut and pasted from another document), of his actual signature from a document titled the "Contractor's Final Affidavit." The referee concluded that the escrow document was a forgery. The referee acknowledged that no direct proof was adduced showing who was responsible for concocting the document, but found that Massari "is the only person who had motive and reason for transposing the signatures." The referee also found that the transposed signature on the escrow document was evidence of a deliberate and knowing act to deceive.
*704 The referee recommended that Massari be found guilty of violating the following Rules Regulating the Florida Bar: rule 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); rule 4-1.15(a) (a lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in the lawyer's possession in connection with a representation); rule 4-1.15(b) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person, and the lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive); rule 4-3.4(b) (a lawyer shall not fabricate evidence, or counsel or assist a witness to testify falsely); rule 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); and rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Applying the Florida Standards for Imposing Lawyer Sanctions, the referee found as aggravating factors: (1) dishonest or selfish motive (standard 9.22(b)); (2) pattern of misconduct (standard 9.22(c)); (3) multiple offenses (standard 9.22(d)); (4) submission of false evidence, false statements, or other deceptive practices during the disciplinary process (standard 9.22(f)); (5) refusal to acknowledge wrongful nature of conduct (standard 9.22(g)); and (6) substantial experience in the practice of law (standard 9.22(i)). As a mitigating factor, the referee found the absence of a prior disciplinary record (standard 9.32(a)). As to discipline, the referee recommended that Massari be disbarred for five years. The referee also recommended that Massari pay the expenses incurred by the Bar, which total $8,440.48.
Massari petitioned this Court to review the referee's report, claiming that the referee's findings of fact were not supported because the only direct evidence supporting the Bar's allegations came from Martinez, whose testimony was unworthy of belief. Massari also claims that disbarment is not the appropriate discipline for this case.

ANALYSIS
We first consider whether competent, substantial evidence in the record supports the referee's factual findings and whether those findings support the referee's legal conclusion that Massari misappropriated client trust funds. We note that Massari's stated version of events differs substantially from the facts found by the referee.
Massari claims that the case against him rests entirely on the testimony of Martinez, who is unworthy of belief. Massari states that the Steens' civil case against Martinez was based on Martinez filing a fraudulent contract with a bank for his own financial gain, and that Martinez's credibility is suspect and his word cannot be taken over that of Massari, who has practiced law for twenty-four years without being the subject of a prior disciplinary case. Massari also challenges the referee's finding that the escrow document was not valid. He argues that Martinez should not be believed when he testified that he did not sign the February 14, 2000, escrow document.
According to Massari, when he and Martinez returned from the settlement mediation on February 14, 2000, Martinez asked Massari if he could place his settlement funds in certain investments with Massari's business partner Mr. Brad Muller. Massari claims that he then introduced Martinez to Muller. Massari claims that later that evening, Martinez provided him with written authorization *705 to invest the settlement proceeds in various ways. Massari, his secretary Hebert, and his business partner Muller, testified that Martinez signed the escrow document on February 14, 2000. Massari claims that he cannot produce the original document because he gave the original to Martinez. Also, Massari alleges that Martinez instructed him to keep these financial matters secret, which is why Massari's statements to Durbin and the Bar were inconsistent. Massari argues that when he received the $30,000 check from First American Title, he endorsed the check and deposited it into his trust account pursuant to the escrow instructions he received from Martinez, even though the specified investment opportunities were no longer available. Based on these allegations, Massari claims that Martinez cannot be believed when he said he did not sign the escrow document and, therefore, the referee's conclusion that Massari misappropriated client funds is clearly erroneous.
This Court has stated that if a referee's findings are supported by competent, substantial evidence, we are precluded from reweighing the evidence and substituting this Court's judgment for that of the referee. See Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). The record demonstrates that the referee's findings of fact and conclusion that Massari misappropriated client funds are supported by competent, substantial evidence. This Court has also noted that the "referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Florida Bar v. Carricarte, 733 So.2d 975, 978 (Fla.1999) (quoting Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991)). Our review of the record in this case indicates that the referee was in the best position to evaluate the credibility of Martinez's testimony, and we find no basis in the record to reject the referee's reliance on that testimony. In addition, the referee also relied on testimony from other witnesses as well as documentary evidence.
Contrary to Massari's arguments, the evidence relied upon by the referee came not only from Martinez, but also from other witnesses such as handwriting expert Green, attorney-friend Rardon, title company manager Durbin, escrow assistant Harlow, and even Massari himself. Handwriting expert Green testified, in detail, that he examined the signatures on the original satisfaction and release of lien that was in the title company's files, the original canceled check for $30,000, the escrow document, and the "Contractor's Final Affidavit." Green also examined and evaluated the signatures on the letter Martinez gave to the police department and twenty-eight checks that it is known Martinez signed. Green examined some of these items under a microscope. His testimony supports the referee's findings that Martinez's signature on the original satisfaction and release of lien is a forgery; Martinez did not endorse the check for $30,000; and Martinez's signature on the escrow document is actually a transposition of Martinez's signature from the "Contractor's Final Affidavit." Green's statements also support Martinez's version of events, because Martinez claims that he did not sign these documents. Further, as the referee pointed out, it belies common sense that Martinez would transpose his own signature onto the escrow document, rather than sign the document.
Rardon's testimony indicates that Martinez told Rardon that he was not satisfied by Massari's answers to his questions about the funds. Also, Rardon's testimony confirms Martinez's version of events, in that Rardon suggested that Martinez contact the title company. The testimonies of *706 title company manager Durbin and escrow assistant Harlow confirm Martinez's testimony about his phone call, when he learned that the $30,000 check had already been disbursed, and his subsequent visit to their office, when he discovered the forged satisfaction and release of lien and the forged signature on the $30,000 check. The statements of Durbin and Harlow corroborate Martinez's version of the events, including the basic point that Martinez was surprised to learn that Massari had already picked up the settlement check and deposited it.
Massari also admitted making five separate disbursements for his own personal use or benefit that encompassed the entire $30,000 of settlement funds. Contrary to Massari's initial claims about intending to invest the settlement funds, Massari admitted that he actually used his client's funds for his own purposes.
After reviewing the testimonies of Green, Rardon, Durbin, Harlow, Martinez, and Massari, we find there is competent, substantial evidence in the record that supports the referee's findings and conclusion that Massari misappropriated client trust funds. Therefore, we approve the referee's findings of fact and recommendations of guilt.

DISCIPLINE
Next, Massari challenges the referee's recommended discipline of disbarment. Generally speaking, this Court will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). Massari argues that the appropriate discipline is a two-year suspension because the record establishes, at worst, a single instance of the misuse of trust funds.
The facts establish that Massari fraudulently obtained his client's settlement funds, misappropriated those funds, and committed fraud when attempting to conceal his misconduct. Under the Florida Standards for Imposing Lawyer Sanctions, disbarment is the appropriate sanction in this case. See Fla. Stds. Imposing Law. Sancs. 4.11 ("Disbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury."), and 5.11(f) ("Disbarment is appropriate when ... a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.").
Our recent case law further demonstrates that the presumptive penalty for the misuse of client funds is disbarment. Florida Bar v. Spears, 786 So.2d 516, 519 (Fla.2001). This Court has recognized that the "overwhelming majority of cases involving the misuse of client funds have resulted in disbarment." Florida Bar v. Travis, 765 So.2d 689, 691 (Fla.2000). Further, this Court has stated that disbarment is the appropriate sanction for misuse of client funds because it is unquestionably one of the most serious offenses a lawyer can commit. Florida Bar v. Porter, 684 So.2d 810, 813 (Fla.1996).
This Court's decision in Florida Bar v. Korones, 752 So.2d 586 (Fla.2000), provides guidance. In that case, the respondent misappropriated funds from his uncle's estate, of which he was the personal representative, for his own use. He also submitted a false final accounting to the other residual beneficiaries. The referee recommended a ninety-day suspension and cited a number of mitigating factors. This Court found that a ninety-day suspension was "far too lenient" and, instead, disbarred Korones for a period of five years. Like Massari, Korones had the aggravating *707 factors of a dishonest or selfish motive and substantial experience in the practice of law. This Court stated that, when determining the discipline to be imposed in a case involving the misappropriation of funds, it is important to look at the circumstances surrounding the misappropriation.
In Korones, this Court stated that "we are faced with a situation in which an attorney with an exemplary career has intentionally and wrongfully misappropriated money from clients and diverted it for his personal use.... Further, this attorney affirmatively filed a false accounting with the beneficiaries of his uncle's estate and paid his son so that he would not be reported to the Bar. The latter actions clearly indicate that the attorney was well aware of the wrongfulness of his conduct." Id. at 591. Like Korones, Massari misappropriated client funds for his personal use and created a fraudulent document to conceal his misconduct. Also, the instant referee found the transposed signature appearing on the forged escrow document was "evidence of a deliberate and knowing act," which is similar to Korones's being "well aware of the wrongfulness of his conduct" when he engaged in the false accounting and payment to his son.

CONCLUSION
We reiterate once again that we will not tolerate the misappropriation of client funds. As this Court stated in Korones, 752 So.2d at 589 (quoting Florida Bar v. Ward, 599 So.2d 650, 652 (Fla.1992)):
The single most important concern of this Court in defining and regulating the practice of law is the protection of the public from incompetent, unethical, and irresponsible representation. The very nature of the practice of law requires that clients place their lives, their money, and their causes in the hands of their lawyers with a degree of blind trust that is paralleled in very few other economic relationships. Our primary purpose in the disciplinary process is to assure that the public can repose this trust with confidence. The direct violation of this trust by stealing a client's money, compounded by lying about it, mandates a punishment commensurate with such abuse.
We find the referee's recommendation that Massari be disbarred is well supported by the rule violations, the Standards for Imposing Lawyer Sanctions, case law, and the fundamental precept of attorney discipline that misappropriation of client funds merits disbarment. Therefore, we approve the referee's recommended discipline and disbar Massari. We also approve the referee's findings of fact and recommendations as to guilt.
Domenic L. Massari, III, is hereby disbarred from the practice of law in the State of Florida. The disbarment will be effective thirty days from the filing of this opinion so that Massari can close out his practice and protect the interests of existing clients. If Massari notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Domenic L. Massari, III, shall accept no new business from the date this opinion is filed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Domenic L. Massari, III, in the amount of $8,440.48, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.