826 So.2d 985 (2002)
THE FLORIDA BAR, Complainant,
v.
Lavenia Dianne MASON, Respondent.
No. SC00-997.
Supreme Court of Florida.
August 29, 2002.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Vivian Maria Reyes, Bar Counsel, Miami, FL, for Complainant.
John A. Weiss of Weiss & Etkin, Tallahassee, FL, for Respondent.
PER CURIAM.
The opinion filed in this case on March 14, 2002, is withdrawn, and the following opinion is substituted in lieu thereof.
*986 We have for review a referee's report regarding alleged ethical breaches by Lavenia Dianne Mason in her handling of a client's trust account funds. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the referee's findings of fact and recommendations as to guilt and discipline, and suspend Mason for two years.

FACTS
The Florida Bar filed a complaint against Mason alleging that she intentionally violated rule 5-1.1(a) of the Rules Regulating The Florida Bar (mandating that money or property entrusted to an attorney for a specific purpose be used only for that purpose) and also violated rule 4-8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation).
The parties stipulated to the following facts and submitted the stipulation to the referee, who adopted them in his report: (1) as a member of The Florida Bar, Mason is subject to the jurisdiction and disciplinary rules of this Court; (2) beginning around May 1994, Mason represented Ruby Donaldson in a claim for damages against the manufacturer of breast implants; (3) in December 1996, Donaldson's claims were settled for $50,000, which was paid in three installments of $5,000, $22,500, and $22,500; (4) the first settlement check for $5,000 was dated December 30, 1996, from which Mason withheld $2,264.54 in fees and costs and disbursed $2,735.46 to Donaldson; (5) the second settlement check for $22,500 was dated August 7, 1997, from which Mason withheld $10,100 in fees and costs and disbursed $12,400 to Donaldson; (6) on January 8, 1998, Mason sent Donaldson two checks for $500 and $4,750, representing refunds on attorney's fees; (7) the third settlement check for $22,500 was dated December 26, 1997, from which, on April 20, 1998, Mason sent Donaldson a check for $17,437.50; Donaldson returned that check to Mason and filed a grievance with the Bar;[1] (8) on June 5, 1998, Mason wrote to the Bar, advising that Donaldson's settlement proceeds were in Mason's trust account; (9) an audit was conducted of Mason's IOTA trust account; (10) the audit revealed that the $17,437.50 due Donaldson was not in Mason's trust account on June 5, 1998, the date of her letter to the Bar (on that date, Mason's trust account balance was $14,544.27, reflecting a shortage of $2,893.23 just to cover Mason's obligations to Donaldson); (11) on June 5, 1998, Mason's total client obligations were approximately $52,532.15, indicating a trust account shortage of at least $37,987.88; (12) from January 1, 1996, through July 31, 1998, Mason made eighty-two transfers from her trust account to her operating account, totaling $252,500, without reference to a client or matter;[2] (13) the eighty-two transfers created shortages in Mason's trust account; (14) on July 27, 1998, Mason's client obligations totaled $53,106.02, but her trust account balance on that date was $19,164.73, indicating a shortage of $33,941.29; (15) Mason violated rule 5-1.1(a); however, she reserved the right to argue that the trust account shortages were the result of negligence, and the Bar reserved the right to argue that the shortages were the result of intentional misconduct.
The referee held hearings on October 23, November 21, and December 19, 2000. *987 Based on the stipulated facts and the evidence presented at the hearings, the referee found Mason guilty of intentionally violating rule 5-1.1(a) because the record demonstrated that at least some of the transfers from the trust account were made to cover shortages in the operating account. The referee also found Mason guilty of gross negligence in violating rule 4-8.4(c), finding that there was not sufficient evidence to support the Bar's claim that Mason specifically intended to mislead the Bar about funds in the trust account on June 5, 1998.
Applying the Florida Standards for Imposing Lawyer Sanctions, the referee found two aggravating factors: (1) a pattern of misconduct, because the misappropriations occurred over a period of fifteen months (standard 9.22(c)); and (2) through gross negligence, Mason submitted false statements when she told the Bar that funds were available in her trust account when they were not (standard 9.22(f)). The referee found six mitigating factors: (1) absence of prior disciplinary record (standard 9.32(a)); (2) personal and emotional problems because Mason was going through a bitter divorce when the trust account violations occurred (standard 9.32(c)); (3) Mason made a timely good faith effort to correct the problems (standard 9.32(d)); (4) Mason was inexperienced in handling the administrative responsibilities of a solo law practice (standard 9.32(f)); (5) Mason had a good reputation (standard 9.32(g)); and (6) Mason was remorseful about the problems she created (standard 9.32(l)).
Although the referee acknowledged that disbarment may be the usual sanction for trust account violations, he recommended suspension for two years and thereafter until Mason demonstrates rehabilitation. The referee stated that a sanction less than disbarment is warranted because of Mason's personal and family problems and her exemplary conduct as an attorney for fourteen years. The referee also recommended that Mason pay the Bar's reasonable costs and expenses in the amount of $7,112.61.
The Bar petitioned for review of discipline, seeking disbarment. Mason cross-petitioned seeking review of the referee's finding of an intentional violation of rule 5-1.1(a).

ANALYSIS
First, we consider the referee's finding of an intentional violation of rule 5-1.1(a). This Court has stated that if a referee's findings are supported by competent, substantial evidence, we are precluded from reweighing the evidence and substituting this Court's judgment for that of the referee. See Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). We find that competent, substantial evidence in the record supports the referee's finding of intentional misconduct. The record demonstrates that some of the eighty-two unidentified trust account transfers were made at the time operating account shortages had occurred. Therefore, we approve the referee's finding that the resulting trust account shortages were the result of intentional misconduct by Mason. We also approve the referee's recommendation as to guilt of an intentional violation of rule 5-1.1(a).

DISCIPLINE
Next, we consider the referee's recommended discipline of a two-year suspension. The Bar argues that the appropriate discipline is disbarment. Generally speaking, this Court will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Florida Bar v. Temmer, 753 So.2d 555, 558 *988 (Fla.1999). Although we have held "that misuse of client funds is one of the most serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate punishment," see Florida Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla. 1991), we find that in the instant case, the referee's recommended discipline of a two-year suspension is the appropriate discipline.
The instant case is clearly distinguishable from the egregious misappropriation cases that have recently come before this Court. Mason's errors here were due to mistakes in accounting practices. She was not attempting to intentionally steal from her clients, and there is no evidence that clients ultimately sustained any loss. In comparison, we examine Florida Bar v. Korones, 752 So.2d 586 (Fla.2000), and Florida Bar v. Travis, 765 So.2d 689 (Fla. 2000). Korones was disbarred for intentionally and repetitively misappropriating funds from his uncle's estate, of which he was the personal representative, for his own use. He also intentionally submitted a false final accounting to the other residual beneficiaries. This Court found that Korones had "intentionally and wrongfully misappropriated money from clients and diverted it for his personal use." This Court further found that Korones had affirmatively filed a false accounting with the beneficiaries of his uncle's estate and paid his son to intentionally conceal his theft to avoid being reported to the Bar. This Court concluded that the "latter actions clearly indicate that [Korones] was well aware of the wrongfulness of his conduct." Korones, 752 So.2d at 591. In a very similar manner, the attorney in Travis was disbarred for deliberately misappropriating clients' funds over a substantial period of time for his personal use. Travis wrote checks to himself out of the trust account, purchased a new home, and paid for a trip to Costa Rica. Travis did not even attempt to replenish his trust account and had not made any substantial effort to do so by the time of the final disciplinary hearing. This Court stated in both Korones and Travis that to determine the appropriate discipline, this Court focuses on the circumstances of the situation. Further, in the decisions to disbar these two attorneys, this Court noted that both Korones and Travis knowingly and intentionally engaged in the misconduct and caused actual harm to clients.
Unlike Korones and Travis, Mason did not intentionally misappropriate client funds for her personal use. Rather, through accounting errors, she inadvertently transferred proceeds to an operating account without proper records. Mason recognized her accounting errors several months before the Bar contacted her and immediately hired a part-time bookkeeper to provide assistance. When she learned the extent of the accounting problems after the Bar contacted her about a grievance, which really had no reference to trust account procedures, she hired a CPA/attorney to audit her accounts and advise her on proper bookkeeping systems. Mason cooperated fully with the Bar. Although Mason made very serious mistakes due to her inexperience in managing trust accounts, she did everything within her control to immediately address the problems once she was aware of them. Mason's actions were, in large part, the result of negligence, and the circumstances of the case do not demonstrate the level of egregious intentional misconduct found in both Korones and Travis. The referee's recommended discipline of suspension, rather than disbarment, is firmly supported by Mason's lack of intent to steal and case law.
Further support for the referee's recommended discipline is found in this Court's holdings and in the Florida Standards for *989 Imposing Lawyer Sanctions, which state that a referee can consider mitigation when determining a recommendation for discipline, even when the presumption is disbarment. See Florida Bar v. MacMillan, 600 So.2d 457, 460 (Fla.1992); Fla. Stds. Imposing Law. Sancs. 9.3 (mitigation). As discussed above, there are six mitigating factors in the instant case. The mitigation supports the referee's recommended discipline. The Bar does not challenge this mitigation.
In Florida Bar v. Corces, 639 So.2d 604 (Fla.1994), in which an attorney intentionally misappropriated money from trust accounts, mitigation was a factor in determining the appropriate discipline. The referee in Corces found the respondent guilty of sixteen rule violations, including, like Mason, violations of rules 5-1.1(a) and 4-8.4(c). Unlike the present case, the referee in Corces found only two mitigating factors: no client complaint or client loss; and an isolated incident of trust account mishandling. This Court ordered a two-year suspension for Corces, rather than the disbarment sought by the Bar. In Corces, this Court relied on MacMillan, a case with similar facts and a discipline of two years' suspension in which the referee found mitigating factors similar to those in the instant case, including: absence of a prior disciplinary record; cooperative attitude toward the proceedings; timely good faith effort to make restitution; and good character and reputation. In both Corces and MacMillan, the respondents were found guilty of using client funds to pay personal bills, then reimbursing the trust accounts for the amounts improperly withdrawn. The record in the instant case demonstrates that Mason made transfers from her trust account funds into her office operating account, but there is no evidence concerning a further improper use of funds or any losses sustained by any client. We conclude that Corces and MacMillan, and the significant mitigation in the instant case (including Mason's inexperience in handling the administrative responsibilities of a solo law practice and her timely good faith effort to correct the problems even before being contacted by the Bar), support the referee's recommendation of suspension instead of disbarment.
We further decline to disbar Mason because this extreme sanction is designed to be imposed in cases where rehabilitation is highly improbable and the conduct egregious. See Florida Bar v. Kassier, 711 So.2d 515, 517 (Fla.1998). In Florida Bar v. Tauler, 775 So.2d 944, 948 (Fla.2000), a case also involving misappropriation of client funds, we held that the potential for rehabilitation was a significant factor in support of the referee's recommendation of suspension over disbarment. The violations and mitigation found in Tauler are very similar to those in the instant case. Like Mason, Tauler was found guilty of misuse of client funds and the referee found in mitigation "personal and emotional problems, positive character and reputation, timely and good faith restitution, full and free disclosure, and remorse." Id. at 945. We note that in the instant case, the referee specifically stated that "[i]t can hardly be said that the rehabilitation of the Respondent herein is highly improbable." The likely success of rehabilitation further supports suspension over disbarment.
We emphasize that we do not condone Mason's actions. This Court does not consider trust account violations as minimal misconduct. Although we are troubled by Mason's gross negligence in replying to the Bar and her mistakes in managing the trust account, we find that the referee's recommendation of suspension has a reasonable basis of support in case law. Further, the nature of Mason's accounting problems, her attempts to resolve the problems even before being contacted by the Bar, the mitigation, and the potential for rehabilitation also support the determination *990 of the referee that a significant suspension is the appropriate discipline in this case.

CONCLUSION
Accordingly, we approve the referee's findings of fact and recommendations as to guilt. Further, we approve the referee's recommended discipline. Lavenia Dianne Mason is hereby suspended from the practice of law in Florida for two years and thereafter until she proves rehabilitation. The suspension will be effective, nunc pro tunc, April 13, 2002, the effective date of the discipline that this Court imposed in its March 14, 2002, decision. In that previous opinion, we afforded Mason thirty days to close out her practice and protect the interests of existing clients. Accordingly, we find that providing Mason with an additional thirty days is not necessary. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Lavenia Dianne Mason in the amount of $7,112.61, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., and PARIENTE and LEWIS, JJ., concur.
SHAW, J., concurs in result only.
WELLS, J., dissents with an opinion, in which HARDING, J., concurs.
QUINCE, J., dissents.
WELLS, J., dissenting.
I do not join in the newly constituted majority's opinion because I cannot reconcile the finding of the referee and majority of intentional misconduct by Mason in respect to "some of the eighty-two unidentified trust account transfers" and the discipline of a two-year suspension. This appears to me to be inconsistent with our recent decision and opinion in Florida Bar v. Travis, 765 So.2d 689 (Fla.2000).
In her motion for rehearing, Mason contends that there is a factual discrepancy with this holding. The majority appears to accept this contention, which is an apparent rejection of the referee's factual determination. I believe a better course than to grant a rehearing and then reach a different conclusion based upon the same record would be to remand the factual issue to the referee for further review. I could join the majority in doing that.
HARDING, J., concurs.
NOTES
[1] Donaldson passed away before the hearings, but her daughter testified as a mitigation witness for Mason. The daughter stated that Donaldson thought that she did not have to pay Mason attorney's fees.
[2] By agreeing to this stipulated paragraph, Mason did not stipulate that all of the eightytwo transfers were improper, only that they were not designated properly.