# Supreme Court of Florida

_____

No. SC2021-0011

_____

**THE FLORIDA BAR**,
Complainant,

vs.

**STEPHEN MATTHEW BANDER**,
Respondent.

May 11, 2023

PER CURIAM.

Respondent, Stephen Matthew Bander, seeks review of a referee's report recommending that he be found guilty of professional misconduct and disbarred for failing to place client funds in his trust account, failing to timely provide refunds to his clients for double payment of attorney's fees, and using the fees to pay firm operating expenses.[1]  Bander challenges the referee's findings of fact and recommendations as to guilt, arguing that his

_____

1.  We have jurisdiction.  *See* art. V, § 15, Fla. Const.

conduct did not violate any of the Rules Regulating The Florida Bar (Bar Rules). He also asserts that if he violated the rules, disbarment is a disproportionate sanction. We disagree, and for the reasons discussed below, we approve the referee's report in its entirety and disbar Bander from the practice of law.

## I. BACKGROUND

Bander represented three clients—identified as clients N, A, and F—who sought U.S. residency through the Immigrant Investor Program (IIP). The three clients invested through an EB-5 Regional Center, Miami Metropolitan Regional Center, in a project called Skyrise Miami Tower Investors, LLC (Skyrise). Skyrise offered to pay the clients' legal fees for the representation related to the visas up to $40,000 per client. Bander billed each of the clients a total of $25,000 for the representation. Half of the fee was due at the time the client signed the engagement agreement with Bander, and the second half was due after United States Citizenship and Immigration Services (USCIS) made a determination on the clients' visa applications. Bander sent the invoice for his legal services to each client at the prescribed time. He also sent an invoice for the

legal services to Skyrise. Both the clients and Skyrise promptly paid the invoiced fees.

Between 2015 and 2017, Bander received $90,000 in payments for legal fees from Skyrise. Each of the Skyrise payments occurred after the clients had already paid the legal fees. For example, Client N was billed for the initial fee on May 22, 2015, and paid on July 8, 2015. Skyrise was billed for the same portion of the fee on October 14, 2015, and paid Bander on November 2, 2015. USCIS approved Client N's application on November 14, 2016, and the next day, both the client and Skyrise were billed for the remainder of the fee. The client paid Bander on November 17, 2016, and Skyrise paid on November 23, 2016. However, the client was not informed of the Skyrise payments until February 27, 2017, and the refund was not sent to the client until March 14, 2017. Bander followed a substantially similar pattern with Clients A and F.

Because the clients had already paid the legal fees, the Skyrise payments were reimbursements of the legal fees to be given back to the clients. Instead of placing these funds in his trust account and sending refunds for the double payments promptly to the clients,

- 3 -

Bander put these monies in his operating account and used the funds for firm expenses.  Eventually, Bander refunded the legal fees to the clients, but only after he received a subpoena for testimony before the United States Security and Exchange Commission (SEC) in February 2017.  According to Bander, he was concerned that the SEC would require disgorgement of the funds and, as a result, his clients would not be able to receive the reimbursements.  Because of this concern, Bander provided refunds of the legal fees to his clients prior to providing testimony to the SEC.

The SEC had previously investigated Bander's firm and Bander's father for acting as an unregistered broker-dealer in connection with representation of clients seeking residency through the IIP program.  The firm was receiving unauthorized commissions from the Regional Centers for the investments facilitated by the firm's clients.  Bander on behalf of the firm signed a cease-and-desist order as part of a settlement agreement that involved disgorgement of the fees.  In 2017, the SEC reopened the investigation of Bander's law firm.  Because of the Skyrise payments, the SEC was concerned that the firm was again receiving commissions from the investment entities.  In his testimony to the

- 4 -

SEC, Bander admitted that he did not hold the Skyrise reimbursements in his trust account, did not notify the clients about the reimbursements, and used the reimbursements for firm expenses. This prompted the SEC to file a Bar grievance against Bander.

After the final hearing in this case, the referee filed a report with findings of fact and recommending that Bander be found guilty of violating five Bar Rules: 4-1.4 (Communication); 4-1.7 (Conflict of Interest; Current Clients); 4-1.8 (Conflict of Interest; Prohibited and Other Transactions); 4-8.4(c) (Misconduct); and 5-1.1 (Trust Accounts).

The referee found the following seven aggravating factors: dishonest or selfish motive; pattern of misconduct; multiple offenses; submission of false evidence, false statements, or other deceptive practices; refusal to acknowledge the wrongful nature of the conduct; vulnerability of the victim; and substantial experience in the practice of law. *See* Fla. Std. Imposing Law. Sancs. 3.2(b). The referee found three mitigating factors: absence of a prior disciplinary record; personal or emotional problems; and timely good faith effort to make restitution or to rectify the consequences

of the misconduct. *See* Fla. Std. Imposing Law. Sancs. 3.3(b). Based on his misconduct, the Standards for Imposing Lawyer Sanctions (Standards), and existing case law, the referee recommends that Bander be disbarred and that he be assessed the Bar's costs. Bander filed a notice of intent to seek review of the referee's report and challenges the findings of fact and each recommendation as to guilt.

## II. ANALYSIS

### A. The Referee's Findings of Fact and Recommendations as to Guilt.

Though Bander claims he is challenging the referee's factual findings, Bander does not dispute that he engaged in the underlying conduct, nor does he take issue with any specific findings by the referee. Our review of the record reveals no error with any of the referee's factual findings and we approve them entirely. Regarding the referee's recommendations as to guilt, Bander believes that his conduct does not amount to violations of the Bar Rules. We disagree.

Our review of a challenge to the referee's findings of fact is limited; if the findings of fact are supported by competent and

- 6 -

substantial evidence in the record, we will not reweigh the evidence and substitute our judgment for that of the referee. *See Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). To the extent a party challenges the referee's recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *See Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). The burden is on the party challenging the referee's findings of fact and recommendations as to guilt to demonstrate that there is no evidence in the record to support the findings or that the record evidence clearly contradicts the conclusions. *See Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

*Informed Consent*

The referee recommends that Bander be found guilty of violating Bar Rules 4-1.4, 4-1.7, and 4-1.8. In certain circumstances, a lawyer must obtain written informed consent from a client before entering into or continuing a representation. Specific to this case, a lawyer is prohibited from accepting compensation for the representation from a third party unless the client gives

informed consent. *See* R. Regulating Fla. Bar 4-1.8(f)(1). Further, a lawyer must "promptly inform the client" of any circumstance that requires informed consent. R. Regulating Fla. Bar 4-1.4(a)(1). Finally, informed consent must be given and "confirmed in writing." R. Regulating Fla. Bar 4-1.7(b)(4). Here, the three clients' legal fees were paid by a third party, Skyrise. Bander did not inform the clients that this created a conflict of interest and did not obtain the required written informed consent from the clients. Instead, Bander argues that he was not required to obtain informed consent from the clients because there was not a substantial risk that his representation would be limited by the third-party payment arrangement. However, the rule clearly states that informed consent is always required when a third party is paying the attorney fees. *See* R. Regulating Fla. Bar 4-1.8(f)(1). Whether there is a risk to the client-lawyer relationship is an additional consideration used to determine if the representation can continue; however, it is not a consideration for determining when informed consent is required. *Id.* Bander was required to inform the clients of the conflict of interest associated with the payment of legal fees by a third party

and receive written informed consent for the arrangement.  He did neither.

Accordingly, we approve the referee's recommendation that Bander be found guilty of violating Bar Rules 4-1.4, 4-1.7, and 4-1.8.

*Trust Account Requirements*

Next, the referee recommends that Bander be found guilty of violating Bar Rule 5-1.1 for not placing the third-party payments in his trust account.  In general, a "lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in the lawyer's possession in connection with a representation."  R. Regulating Fla. Bar 5-1.1(a)(1).  "Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. . . . [A] refusal to account for and deliver over the property on demand is conversion."  R. Regulating Fla. Bar 5-1.1(b).  "On receiving funds or other property in which a client or third person has an interest, a lawyer must promptly notify the client or third person" and "must promptly deliver to the client or third person any funds or other

property that the client or third person is entitled to receive . . . ."
R. Regulating Fla. Bar 5-1.1(e).

Here, Bander billed both the client and the third party, Skyrise, for his legal fees. The clients paid the legal fees, and later, Skyrise also paid the same legal fees. Bander acknowledges that he was required to return the double payments to his clients. However, he claims that because the monies he received from Skyrise were earned legal fees, he was allowed to deposit them into his operating account and use the funds like any other earned legal fees—except the payments from Skyrise were not like any other earned legal fees. They were a duplicate payment for fees that had already been paid by the clients. The monies were clearly the clients' property at the point Bander received them. Thus, the monies should have been deposited into Bander's trust account pursuant to Bar Rule 5-1.1(a)(1) until they were promptly returned to the clients. Even if the clients indicated that they wished for the monies to be kept for any additional work, Bander was still required to deposit the funds into his trust account and hold them there until he actually earned them.

In addition to being required to deposit the funds into his trust account, Bander was required under Bar Rule 5-1.1(e) to promptly notify and deliver the monies to the three clients. Instead, Bander placed the funds in his operating account and converted them to his own use for firm expenses. Bander's use of the funds, failure to promptly notify his clients of their receipt, and failure to return the funds to the clients until prompted by the SEC subpoena are actions in clear violation of Bar Rule 5-1.1.

Accordingly, we approve the referee's recommendation that Bander be found guilty of violating Bar Rule 5-1.1.

*Misconduct*

Finally, the referee recommends that Bander be found guilty of violating Bar Rule 4-8.4(c). However, Bander argues the record contains no evidence that he knowingly or deliberately made a false and misleading statement about the third-party payments or intended to mislead or conceal the payments from his clients. Bar Rule 4-8.4(c) states a lawyer must not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Here, Bander knowingly kept the double payment of fees despite admitting that they should be returned to the clients. He

did not inform the clients of the third-party payments or return the money to the clients until he received a subpoena from the SEC. This was a deliberate misuse of the clients' funds. *See, e.g., Fla. Bar v. Cramer*, 643 So. 2d 1069, 1070 (Fla. 1994) (concluding that lawyer's use of trust account funds to pay operating expenses was done in an attempt to mislead the IRS after being notified that the IRS intended to levy). We therefore approve the referee's recommendation that Bander be found guilty of violating Bar Rule 4-8.4(c).

## B. Discipline.

We now turn to the referee's recommended discipline, disbarment. A referee's recommended discipline must have a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. *See Fla. Bar v. Picon*, 205 So. 3d 759, 765 (Fla. 2016) (citing *Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999)). In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is this Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Kinsella*, 260 So.

3d 1046, 1048 (Fla. 2018); *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

We begin our review with the referee's findings in aggravation and mitigation. Bander argues that the referee's finding that seven aggravating factors apply as well as the referee's failure to find additional mitigating circumstances were in error. "[A] referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Alters*, 260 So. 3d at 82 (quoting *Germain*, 957 So. 2d at 621).

First, Bander argues that dishonest or selfish motive does not apply because he was merely mistaken about the nature of the funds in assuming they were earned fees that should be deposited in his operating account. However, Bander knew the Skyrise payments were duplicative of the clients' payments and intended to be reimbursements to the clients. Instead of promptly informing the clients and returning the funds, he used them to pay firm expenses. This is sufficient evidence to support this aggravating factor.

Next, Bander argues that the pattern of misconduct and multiple offense factors do not apply. However, Bander's conduct violated five Bar Rules and involved three different clients and six different payments over a two-year period. This is sufficient evidence to support both a pattern of misconduct and multiple offenses. *See Fla. Bar v. Smith*, 866 So. 2d 41, 47 (Fla. 2004) (finding a pattern of misconduct for neglect that extended over one and a half years, and multiple offenses for a recommendation of guilt for thirteen rule violations).

Bander argues that submission of false evidence is not supported. However, Bander admitted to the SEC and the Bar that the clients were entitled to the third-party payments as refunds; but then at the final hearing, he claimed that he believed the funds were instead earned legal fees that he was entitled to use for firm expenses. This new statement is in direct contrast with earlier admissions and was a deliberate attempt to minimize culpability. Thus, there is sufficient evidence to support the submission of false evidence factor.

Additionally, Bander continues to maintain that he did not violate any Bar Rules, even though his misconduct in this case is a

textbook example of misuse of client funds. A review of the Bar Rules and rudimentary legal research would have quickly dispelled Bander of the notion that he can do whatever he chooses with client property. We find that Bander has clearly failed to acknowledge the wrongful nature of the conduct and the referee correctly applied this factor. *See Germain*, 957 So. 2d at 622 (noting that when an issue rests on a legal question, the aggravating factor of failing to acknowledge the wrongfulness of the conduct clearly applies if simple legal research could have led to the discovery that the conduct was unethical).

Next, despite having practiced law since 1999, Bander claims that having a third party pay legal expenses was a new issue for him. However, the substantial experience factor is not parsed by expertise in specific areas of the law, but instead applies to experience related to the capability of determining whether conduct is violative of the rules. *See Fla. Bar v. Broome*, 932 So. 2d 1036, 1042 (Fla. 2006) (providing that substantial experience in the law is relevant as an aggravating factor for "kinds of violations more likely to be committed by inexperienced lawyers than seasoned attorneys, so as to make violations by seasoned attorneys more egregious").

Thus, Bander's experience of over twenty years in the practice of law is an appropriate aggravating factor.

Finally, Bander argues that the victims were not vulnerable as they knew that Skyrise promised to pay their legal fees and they could have inquired with Skyrise as to the status of those payments. However, Bander failed to receive written informed consent for the third-party payments, so it is not clear whether the clients did actually know about the Skyrise payment arrangement. Further, Bar Rule 5-1.1(e) requires an attorney to immediately inform clients of receipt of funds in which they have an interest, in part because of the vulnerability of clients generally in having an attorney receive funds on their behalf. Thus, this factor is supported by the record as well.

All seven aggravating factors found by the referee are supported by the record, and we conclude that they were appropriately considered in determining the sanction.

In addition to the three mitigating factors found by the referee, Bander argues that the following additional factors should have also been considered: absence of a selfish or dishonest motive; full and free disclosure to the Bar and cooperative attitude toward the

proceedings; character or reputation; physical or mental disability or impairment; and unreasonable delay in the proceedings. *See* Fla. Std. Imposing Law. Sancs. 3.3(b). However, the absence of a selfish or dishonest motive mitigating factor cannot be found simultaneously with the dishonest or selfish motive aggravating factor. Nor can the full and free disclosure mitigating factor be found simultaneously with the submission of false evidence aggravating factor. As the submission of false evidence and dishonest or selfish motive aggravating factors were both found by the referee and supported by the record, there is no basis for finding absence of a dishonest or selfish motive and full and free disclosure as mitigating factors in this case.

For physical or mental disability, we agree with the referee that the evidence presented in the form of testimony by Bander about suffering symptoms of undiagnosed Graves' disease was not related to the misconduct, and Bander's testimony about this issue was not substantiated by any other evidence. *See Fla. Bar v. Horowitz*, 697 So. 2d 78, 83-84 (Fla. 1997) (approving referee's rejection of mental disability as a mitigating factor where lawyer's

- 17 -

claim of clinical depression was unsubstantiated and concluding that it helped explain but did not excuse lawyer's misconduct).

Finally, as to delay in proceedings, Bander has not identified specific prejudice resulting from the delay. *See Alters*, 260 So. 3d at 83 (providing that the mitigating factor of an unreasonable delay does not apply if the lawyer "failed to demonstrate before the referee any specific prejudice he suffered resulting from the delay"). Though Bander stated he would have preserved his late father's testimony regarding the earlier dealings with the SEC before his death in 2018, this does not appear to be relevant to the third-party payments at issue, especially as his father retired in 2015, and the payments were made between 2015-2017. Thus, the referee's determination that these additional mitigating factors did not apply is supported by the record.

As to the sanction, the referee recommends disbarment based primarily on the violation of Bar Rule 5-1.1 in misusing client funds. "Disbarment is the presumptively appropriate sanction, under both the Standards and existing case law, when a lawyer intentionally misappropriates trust funds." *Id.* at 84; *see* Fla. Stds. Imposing Law. Sancs. 4.1(a) ("Disbarment is appropriate when a

lawyer intentionally or knowingly converts client property regardless of injury or potential injury."); 5.1(a)(6) (Disbarment is appropriate when a lawyer "engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.").

This presumption has been overcome in very limited situations on "a showing of substantial mitigating circumstances." *Alters*, 260 So. 3d at 84 (citing *Fla. Bar v. McFall*, 863 So. 2d 303 (Fla. 2003); *Fla. Bar v. Tauler*, 775 So. 2d 944 (Fla. 2000)). For example, the presumption of disbarment may be overcome by a showing that the trust funds were not intentionally misappropriated and not for personal use, or the misconduct occurred during a period of extreme personal or emotional distress or was due to substantially impaired judgment. *See Fla. Bar v. Mason*, 826 So. 2d 985, 988 (Fla. 2002) (imposing suspension for misconduct involving inadvertent transfer of funds to an operating account based on inexperience in managing trust accounts and the attorney immediately addressed the problems once aware); *Fla. Bar v. Wolf*, 930 So. 2d 574, 578 (Fla. 2006) (ordering suspension for unintentional trust account violations due to sloppy bookkeeping by

attorney who immediately covered shortages and had significant mitigating factors including unreasonable delay); *Smith*, 866 So. 2d at 47 (imposing suspension where "financial mismanagement was the product of extraordinary sloppiness and negligence in bookkeeping, rather than misappropriation or an intent to deceive [lawyer's] clients."); *Tauler*, 775 So. 2d at 948 (imposing suspension where "misappropriations were the result of severe financial hardship brought on by [lawyer's spouse's] health problems and bankruptcy" and were isolated instances of misconduct); *McFall*, 863 So. 2d at 308 (imposing suspension based on numerous mitigating factors including personal and medical problems involving significant amounts of pain medications that altered the lawyer's thinking, which diminished culpability).

However, this is not one of those extremely limited circumstances. Bander knowingly converted client property for his own benefit. Despite previously admitting that the monies were client funds, Bander attempted to recharacterize the payments as earned legal fees during the Bar proceedings to avoid responsibility for his misuse of the funds. Thus, Bander has not demonstrated that his case should be an exception to the presumptively

appropriate sanction of disbarment, and we conclude that the recommended sanction of disbarment has a reasonable basis in the existing case law.

Because the referee's recommendation of disbarment has a reasonable basis in both case law and the Standards, we conclude that this is the appropriate sanction in this case.

### III. CONCLUSION

Accordingly, we approve the referee's report in its entirety. Stephen Matthew Bander is hereby disbarred. The disbarment will be effective 30 days from the filing of this opinion so that Bander can close out his practice and protect the interests of existing clients. If Bander notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Bander shall fully comply with Rule Regulating The Florida Bar 3-5.1(h) and Rule Regulating The Florida Bar 3-6.1, if applicable. Bander is further directed to comply with all other terms and conditions of the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from

Stephen Matthew Bander in the amount of $20,293.75, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, Mark Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida, and Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida; and Kevin W. Cox, Tiffany Roddenberry, and Kathryn Isted of Holland & Knight, LLP, Tallahassee, Florida,

for Complainant

D. Culver Smith III of Culver Smith III, P.A., West Palm Beach, Florida,

for Respondent